[Civ. No. 2131. First Appellate District.—August 28, 1917.]

JOANNA M. DRISCOLL et al., Respondents, v. J. S. MYERS, Appellant.

LANDLORD AND TENANT—UNLAWFUL DETAINER—ABATEMENT OF RENTAL—NATURE OF AGREEMENT.—In this action in unlawful detainer, it is held that the findings are supported by the evidence that the written agreement to repay the lessee a portion of the rent, as it was paid, on account of unsettled business conditions, was not a modification of the lease, as contended by defendant, but was a temporary agreement.

ID.—IMPROVEMENT OF PREMISES — INDEMNIFICATION OF LESSEE — UNAVAILABLE DEFENSE.—An agreement by a lessor to indemnify a lessee for any loss which might accrue to him during the term as the

result of his improvement of the demised premises cannot be availed of as a defense in an unlawful detainer action, as the loss cannot be determined until the expiration of the term.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order denying a new trial. Everett J. Brown, Judge.

The facts are stated in the opinion of the court.

H. B. Griffith, L. D. Manning, and Gibson & Woolner, for Appellant.

Neal Power, Snook & Church, and J. C. Flannery, for Respondents.

LENNON, P. J.—In this action of unlawful detainer the plaintiffs had judgment from which the defendant appeals. The action was defended upon the theory that the defendant was holding under an alleged modification of the original lease, and that he was not in default of the terms thereof.

Briefly stated, the facts of the case are these: On October 15, 1906, one McFadden, plaintiffs' predecessor in interest, as lessor, and J. S. Myers, the defendant, as lessee, entered into a written lease of certain real property for a term of fifteen years, commencing January 1, 1907, and ending December 31, 1921. At the time of the execution of the lease, the demised premises consisted of an unimproved lot of land in the city of Oakland for which graduated rentals were provided to be paid in increasing amounts as follows: ''$100 per month for each of the first thirty months; $120 per month for each of the second thirty months; $160 per month for each of the third thirty months; $225 per month for each of the fourth thirty months; $260 per month for each of the fifth thirty months, and $275 per month for each of the sixth and last thirty months thereof.'' There was no agreement or obligation on the part of the lessee to improve the lot, but the lease in terms provided ''that said lessee . . . agrees that all buildings and improvements that may be erected or put upon said premises shall be at his own cost and expense, and shall thenceforth remain thereon as an inseparable part of said premises and kept by him generally in repair, and shall continue and be the property of said lessor upon the determina-

tion of this lease." The lessor McFadden died testate August 5, 1911, and plaintiff, Thomas A. Driscoll, was appointed and qualified as executor of his estate. On July 9, 1912, the demised premises were distributed to plaintiffs by a decree duly made and entered in the estate of McFadden.

It appears that on August 2, 1909, McFadden executed to the defendant the following writing, which, it is contended, constituted the alleged modification of the lease:

"August 2, 1909.

"Mr. J. S. Myers: I think that this memorandum will be satisfactory to you for the time being in reference to the lease made by myself and you on the property on the northwest corner of Grove and 22nd streets, Oakland, California. I realize that this lease was entered into at a time when business conditions and rental values were more prosperous than at present. I do not care to make permanent changes in reference to the lease at this time; but if you will send the rent each month according to the terms of the lease, I will call upon you every two or three months and will examine the account and make up and pay you an amount which will be equal to one-third of the total income on the property, until such time as conditions become more settled as to permanent rental values. It is my intention, and I agree, that during the life of said lease, you shall not lose more than approximately one-third of the cost of the improvements, repairs, and necessary expenses.

"(Signed)     B. McFADDEN.

"This agreement is satisfactory and I agree to the same.

"(Signed)     J. S. MYERS."

The defendant regularly paid McFadden the rental reserved in the lease, save during a period of thirteen months, commencing October 1, 1909, and ending October 1, 1910. During this period the defendant paid one hundred dollars per month instead of $120 per month, as called for by the lease. Upon the termination of this period, the defendant resumed the payment of the rental in the amounts reserved in the lease, and continued to pay the same up to and including the month of December, 1913. Since then the defendant has failed and refused to pay any rental at all upon the ground that if an accounting were had pursuant to the terms of the alleged modification of the lease, it would be found

that the defendant was not in default, and that the plaintiffs were indebted to him.

The trial court found, among other things, that the writing in question was not executed as, and was never intended by the parties thereto to be, a modification of the lease, and that the abatement of the rental reserved therein to the extent of $20 per month from October 1, 1909, to October 1, 1910, was not made by McFadden under and pursuant to the terms of the alleged modification.

These findings are assailed upon the ground that they are not supported by the evidence. This is the only question necessary to be considered, for if, as we are convinced, the evidence supports these findings, they in turn will alone suffice to support the judgment, and therefore we need not determine the remaining question as to whether or not the further finding of the trial court that there was no consideration for the alleged modification is supported by the evidence.

That the abatement of the rent was not made because of the alleged modification of the lease is evidenced in part by the undisputed fact revealed by the evidence that no abatement of the rent immediately followed its execution, and that none was allowed until October 1, 1909, which was some two months subsequent to its execution.

That the abatement of the rent was the result of an understanding apart from the execution of the alleged modification is fairly inferable from the further fact that on November 16, 1909, which was just about two weeks subsequent to the first abatement of the rent, the defendant in a letter written by him to McFadden said: "I want to thank you very kindly for the consideration you have shown in the adjustment of the rent, and I assure you that I intend to treat you fairly and justly. In making this lease I simply overbid the value of the land when conditions were booming, I expect to lose pretty heavily, but that is no fault of yours."

Added to this, the record shows the admitted fact that after the expiration of the thirteen months, during which the rent was abated, and up to and including December 31, 1913, the defendant resumed payment of the rent in the several amounts reserved in the lease, and this fact tends most strongly to negative the idea that the abatement of the rent was anything more than a mere temporary adjustment, and fortifies the conclusion that it was not made and allowed pur-

suant to any agreement or understanding of the parties embodied in the alleged modification of the lease.

Upon its face the writing in question shows affirmatively that it was never executed as, or intended to be, a permanent modification of the lease, for it is expressly declared therein that McFadden did not at that time "make any permanent changes in reference to the lease."

Moreover, there is the testimony of defendant to the fact that neither he nor McFadden ever construed and considered the writing in question to be a permanent modification of the lease. Indeed, he could not say otherwise in the face of the undisputed fact that at all times subsequent to the execution of the alleged modification, save during the period that the rent was abated, he paid the rent called for in the lease, and thereafter repeatedly importuned plaintiffs for a modification of the lease with reference to the rentals, without ever at any time asserting or even intimating that the lease had been modified by McFadden.

In this connection the record further shows that on December 23, 1913, the defendant writing to the plaintiff Thomas A. Driscoll, requesting a change in the terms of the lease, admitted that he recognized the fact that the plaintiffs were "not under any legal obligation to change the terms of the lease, and it would clearly be a matter of equitable adjustment between man and man if anything is done."

It will thus be seen that the language of the writing in question, coupled with the admissions and conduct of the defendant concerning the purpose and effect of the writing, warranted the finding that it was not executed as, and intended by the parties thereto to be, a modification of the lease.

Conceding, as is contended, that by the writing in question McFadden contemplated and agreed to indemnify the defendant to the extent of two-thirds of any loss which might accrue to him during the entire period of the lease as the result of his improvement of the demised premises, still that fact could not be availed of as a defense to the action of unlawful detainer grounded upon a breach of the covenant to pay the rent reserved in the lease, nor interposed as an offset to the sum sued for as rent, for manifestly the defendant's loss, if any, could not, under the terms of the writing, be determined or even approximated until the expiration of

the term of the lease and a full performance by the defendant of all of its terms.

The judgment and order appealed from are affirmed.

Richards, J., and Kerrigan, J., concurred.