[L. A. No. 4800. Department Two.—March 5, 1919.]

## CLINTON CAMPBELL, Respondent, v. FRANK J. SPARE et al., Appellants.

[1] LEASE— PAYMENT OF RENT — DEALINGS OF PARTIES — TEMPORARY CONCESSION—FUTURE RENTS UNAFFECTED.—Where the lessor under a written lease in which the rents reserved are payable in specified monthly installments, in order to assist the lessees in tiding over certain slack months, accepts varying sums, each for less than that specified in the lease, as payment in full for such months, such concessions do not operate as a modification of the lease in reference to the amount of future monthly installments of rent.

APPEAL from a judgment of the Superior Court of Los Angeles County. J. P. Wood, Judge. Affirmed.

The facts are stated in the opinion of the court.

Oscar C. Mueller, Alfred Wright, and Wm. W. Lovett, Jr., for Appellants.

James, Smith & McCarthy and Neil S. McCarthy for Respondent.

LENNON, J.—In this action the plaintiff recovered a judgment in the sum of $2,329, found to be due to the plaintiff as the unpaid balance of rent reserved by the terms of a written lease entered into on January 29, 1913, between the plaintiff as lessor and the defendants, Frank J. Spare and Anna E. Spare, his wife, as lessees. The demised premises consisted of a furnished apartment house in the city of Los Angeles known as the Campbellton and the lease, which was to continue for a term of five years, prescribed as rental the sum of

$675 a month, payable monthly in advance, from February 1, 1913, to and including January 31, 1914, and the sum of seven hundred dollars a month payable in advance for the remainder of the term. The defendants T. L. Henderson, George J. Morgan, and F. Nutting were sureties on a bond in the sum of two thousand five hundred dollars conditioned for the faithful performance of the covenants of the lease.

Substantially stated, the further facts of the case as revealed by the pleadings and proof are as follows: The lessees took possession of the leased premises under the lease on the first day of February, 1913, and vacated them on August 10, 1914, without paying any rent for the months of June, July, and August of that year. At the beginning of the term the lessees regularly made monthly payments of rent as provided in the lease up to and including the month of May, 1913, when they notified the plaintiff by letter addressed to him at Phoenix, Arizona, that they found ''it utterly impossible to produce an income commensurate with the rent required by the terms of the lease,'' and were, therefore, ''in the position of either continuing in the occupancy under the lease at a heavy loss . . . or surrendering possession,'' and the lessees, so the letter said, called the situation to the attention of the plaintiff to the end that he might judge which he desired they should do. The letter assumed that the plaintiff appreciated the conditions which existed during that period of the year, and following an assertion that the house was substantially vacant, concluded by saying, ''We feel that it is no more than right for us to ask that you lower the rent to such a reasonable amount which will enable us to meet it promptly at the time it is due.'' The plaintiff on May 29, 1913, replied by letter that he had written his wife to call on the lessees ''and talk matters over regarding the Campbellton.'' Accordingly, plaintiff's wife, who was then residing in Los Angeles for the summer, called upon the lessees and as the result of oral negotiations an arrangement was entered into whereby she was to occupy an apartment of the leased premises and the lessees were to pay whatever they could from month to month over and above their living expenses and the cost of operating the apartments. On October 10, 1913, the lessees mailed plaintiff a check in the sum of $350, which the letter accompanying stated was ''sent in full for September.'' On October 24, 1913, the plaintiff acknowledged the receipt of the

check and requested the lessees to "render . . . a statement. of the receipts and expenditures for the month of September." On January 2, 1914, plaintiff wrote to the lessees calling attention to the fact that he had not received the rent due for the preceding month of December, and also to remind the lessees that the terms of the lease provided "that this rent shall be paid in advance on the first of each month and I must insist upon the payments being made promptly as provided." On April 30, 1914, the lessees wrote plaintiff as follows:

"Los Angeles, Calif., April 30, 1914.

"Mr. Clinton Campbell,

"Phoenix, Arizona.

"Dear Sir: Referring to the rent proposition. It is impossible to state at this time what can be done in the future, but can say that since the 1st of April we have had several empties, and at this writing have nine vacant apartments, which reduce the rent income $320. You may think these are a great many vacancies for this time of the year but I can assure you that most of the apartment houses are about half empty. Several of the new apartment houses are unable to get anyone to lease them, and those that are running are obliged to reduce their rents, so that we have had to do likewise.

"We have had several people looking within the last few days and hope to land some of them.

"I had a real estate man here yesterday looking over the proposition but it is all exchange and no cash, for land situated in the San Joaquin valley. I am still working on a sale of the property.          Yours truly,

"F. J. SPARE."

The plaintiff did not reply to this last letter and on May 5, 1914, the lessees again wrote plaintiff as follows:

"Los Angeles, 5/5/14.

"Mr. Clinton Campbell,

"Phoenix, Arizona.

"Dear Sir:

"Not having had a reply to my letter of April 30th regarding the rent proposition, I would like to know what concession you are willing to make from April 1st. The net income for April did not exceed $400 and for May the rent income is not likely to exceed $700, unless we are able to rent some of our vacant apartments. Owing to other apartment houses

reducing the rents we have also been obliged to do so, making
our rent income less.

"Kindly let me hear from you by return mail.

"Yours truly,

"F. J. SPARE."

To this letter plaintiff replied as of May 7, 1914, acknowl-
edging the receipt of it and the preceding letter and declaring
in effect that in so far as he was concerned neither letter
seemed to need a reply, and then proceeded to say: "I presume
from your explanation about vacancies, reduced rents, etc.,
that you desire that I make a reduction in rentals; you will
remember that your original contract calls for a rental of $700
per month and in many ways I think that I have made all the
concessions that I want to and as I have said before I must
insist upon your getting your account to date."

This last letter from the plaintiff, notwithstanding its tenor
and text, was not acknowledged nor directly replied to by the
lessees, and on June 14, 1914, the defendant F. J. Spare wrote
plaintiff, inclosing a check for one hundred dollars "in full
for May rent," and expressing the regret "that business is
not better," which brought a reply from plaintiff dated July
8, 1914, acknowledging the receipt of the "check for $100 on
April account," and stating that the inscription thereon "in
full for May rent" was erased by plaintiff because he did not
care to commit himself to an acceptance of that amount "in
full settlement for that month." In addition to these letters
of the parties there were offered and received in evidence
numerous receipts of the plaintiff's and checks of the lessees
accepted by plaintiff evidencing the payment of sums varying
in amounts from $150 to five hundred dollars, all of which—
receipts and checks—by express inscription purport to have
been made, given, and accepted as evidencing payment in full
of the rent for the particular month specified in each instance,
commencing with the month of May, 1913, and covering each
of the following months ending with and including the month
of March, 1914.

The foregoing facts constitute primarily the basis of appel-
lants' contention that the dealings of the parties with regard
to the lease of the premises operated as a modification of the
original terms of the lease relative to the payment of rent re-
served thereunder to the extent that the lease itself was aban-
doned and the lessees' occupancy of the premises thereby and

thereafter transformed into a tenancy from month to month. The inception of this contention is found in the arrangement which was entered into in the first instance by plaintiff's wife and the lessees which it is claimed contemplated creating, and fixed a modification of the terms of the lease which, though orally made subsequently, became by the parties performing pursuant to its terms, an executed agreement, and therefore binding upon and enforceable against both parties despite the fact that the lease itself provided that it should "not be changed, altered, or modified except by writing indorsed hereon and signed by the parties hereto."

We find nothing in the evidence which would have compelled the trial court to find and conclude that the initial arrangement was sought, intended, and understood by the parties to be a permanent modification of the terms of the lease, or that it eventuated into anything more than a mere temporary abatement of the rent from month to month which was acceded to from time to time in response to the urgent and insistent importunities of the lessees. Clearly, the correspondence of the parties, considered in its entirety, cannot be taken as decisively indicating that the initial agreement was at its inception intended to extend beyond and control the situation for any greater length of time than might be necessary to temporarily tide the lessees over the slack summer months. To the contrary, that correspondence, we think, tends to show that the lessees understood the initial arrangement to be nothing more than a temporary concession; otherwise why should they as late as April and May, 1914, writing plaintiff say: "Referring to the rent proposition. It is impossible to state at this time what can be done in the future . . . What concessions are you willing to make from April 1st." Then, again, there is the evidence of plaintiff's wife to the effect that at no time was there any discussion with her concerning a permanent reduction in the rent and that she entered into the initial arrangement with the lessees "only because they said they were up against it; that the house was nearly empty and wanted to know if we would do that for the summer months." The testimony of plaintiff's wife in the particular that the arrangement was only for the slack summer months is fortified in a measure by a letter of the lessee Anna Spare, dated November 20, 1913, to the plaintiff, wherein she said: "I arranged with Mrs. Campbell before she left to

endeavor to pay a monthly rent of $400 during the winter
months commencing with October providing the business jus-
tified.'' Aside from the fact that the truth of the statement
contained in this letter concerning a new arrangement for a
fixed rental for the winter months was flatly denied by the
testimony of the plaintiff's wife and was, therefore, a contro-
verted fact in the case, the letter itself not only falls short
of supporting, but in a measure tends to defeat the conten-
tion that the initial arrangement was intended to extend be-
yond certain months, and contemplated the permanent sub-
stitution of a varying sum in payment of the rentals to be
derived from the contingent profits of the business in lieu of
the sum certain fixed and reserved as rentals by the terms of
the lease. (*Driscoll* .v. *Myers,* 34 Cal. App. 490, [168 Pac.
145].) [1] The fair inference, it seems to us, to be drawn
from the dealings and conduct of the parties is that they were
desirous and willing to meet and overcome an embarrassing
financial situation through the medium of temporary conces-
sions which were not intended or accepted by the parties as
permanently impairing or abrogating the original terms of
the lease. The case of *Raymond* v. *Krauskopf,* 87 Iowa, 602,
[54 N. W. 432], so strongly relied upon to support appellants'
contention does not seem to us to be in point. That case was
an action to recover rent originally reserved in a written lease
of land which required the lessee to farm the land in a farmer-
like manner, to plant corn by the 20th of May, and to deliver
to the lessor by the twenty-fifth day of the following Novem-
ber, sixteen bushels of corn per acre. The lessee cultivated
the land as required, but the growing crops thereon having
been damaged by storms, the parties entered into a parol
agreement whereby the lessee was to replant the leased land
to corn, farm it to the best of his ability and then deliver to
the lessor ''in full of all demands for rent'' one-half of the
replanted corn. In keeping with the new agreement the
lessee replanted the land to corn, farmed it during the re-
mainder of the season, and of the 350 bushels of corn ulti-
mately harvested, delivered about two hundred bushels to the
lessor in payment of the rent. The appeal was from a judg-
ment entered upon a directed verdict in favor of the lessor
in the sum of $204, which evidently represented the differ-
ence between the value of the delivered and accepted two hun-
dred bushels of corn and that of 480 bushels which the lessor

claimed was due him under the provisions of the written lease. It will be noted that in that case no question of a periodical reduction in the payment of rent was, as here, involved, and that when disposing of the appeal the court evidently proceeded upon the theory that the evidence showed, as it doubtless did, that the oral negotiations of the parties had ripened into a fully executed contract and the only question really decided was whether or not the oral agreement was supported by a good consideration. In discussing that question, the court, while distinguishing, in effect, approved the case of *Wheeler* v. *Baker,* 59 Iowa, 86 [12 N. W. 767], where it was held that the rental terms of a written lease for the entire term were not abrogated, nor was the lessor bound to accept for the full term the reduced rental of certain months, because of the fact that the lessor had *ex mera gratia* accepted the reduced rental for a portion of the time. The case of *Sinnige* v. *Oswald,* 170 Cal. 55, [148 Pac. 203], seems to be decisive of the point presented here. Its facts are practically parallel, in their essential features with the facts of the present case, and it was there said: "The finding that there was no change in the terms of the lease in the alleged particular of reducing the rent is sustained by the evidence. Concessions of the kind that were shown by the defendants, when supported by a consideration, are valid to the extent that a lower rent has been tendered and accepted as satisfaction in full of the installments thus paid. They are not sufficient to establish a change in the written contract so as to affect the amount of future installments of rent where no such change of terms has been made in writing."

The judgment is affirmed.

Wilbur, J., and Melvin, J., concurred.