## WILSON v. SCHOONOVER

(No. 2140; May 3, 1940; 101 Pac. (2d) 866)

520

For the appellant, there was a brief and oral argument by *Burt Griggs* of Buffalo.

For the respondent, there was a brief by *John F. Raper* of Sheridan.

RINER, Chief Justice.

This is a direct appeal from a judgment of the district court of Johnson County. The question presented is whether the defendant, Schoonover, as lessee, is liable for the yearly rental as claimed by the plaintiff, Wilson, as lessor, of certain lands owned and leased by him to the defendant during the years 1936-1937 and 1937-1938, said lands being located in Campbell County, Wyoming.

The plaintiff brought suit in the district court aforesaid for the rentals claimed to be due him for these two years, in the sum of $300.00, the yearly rental being averred to be $150.00 less a payment on account thereof of $100.00, plus accruing interest; in other words for a total sum of $200.00 and interest. The defense pleaded was a modification of the agreed rental rate payment and counterclaim for $25.00 due to the alleged fact that plaintiff sold the leased property in question to a third party in the summer of 1937 and the defendant was thereby deprived of the use of the demised premises immediately after the sale to his damage in the amount stated. Plaintiff's answer to this pleading was a denial of the claimed rental rate change; as to the counterclaim it was that the defendant voluntarily agreed with the purchaser of the leased premises to accept, and that defendant did accept, the use of other lands owned and controlled by said pur-

chaser in lieu of the leased land, which he did not use. This exchange of lands was denied by the defendant.

The case was tried to the court without a jury and judgment was rendered for the full amount claimed by him upon a general finding in favor of the plaintiff and that the yearly rental value of the lands was $150.00.

The controlling facts—some of which we must take as established because of the general finding of the trial court upon conflicting evidence—appear to be these: Both the plaintiff and the defendant agreed both in their pleadings and their testimony, that, as stated by the defendant Schoonover, as a witness in his own behalf, he used the lands in question "for several years at a rental of $75.00 a year, and Mr. Wilson, after a series of years, wasn't satisfied with $75.00 a year and the sheep business was pretty good at that time, so I agreed to pay him $150.00 a year. This went on until 1935." For the year 1935 Schoonover sent Wilson a check for $75.00 for the yearly rental, with, as Wilson testified, "a hard luck story" and a statement that there was no feed on the land in question that year. Wilson accepted the check, and, as he states in his testimony, he "let it go at that," but not with any thought of reducing the rent to that sum for the future because he had been offered $200.00 per year for the lease of these lands.

On August 13, 1936, defendant wrote plaintiff, concluding his letter thus:

"Ray, how does our lease stand? I think I am behind on payments, but if things ever get better while I have sheep, I would like to keep the lease. Please write me about the lease."

To that letter Wilson responded, as he testifies, that "he (Schoonover) owed me the lease money for 1936, and I wrote and told him I would like to have the lease money and if he couldn't send it all to send part of it

and send the other part later on, that my insurance was due the latter part of October and I needed the money. I never got a letter from him or a check until May 1937, and he sent me a hundred dollars. He was supposed to send me $150.00."

Schoonover's letter of May 12, 1937, in so far as it dealt with rent payments read thus:

"I enclose check for $100.00, payment on my lease. I appreciate your waiting this long time. I still want to hold the land."

Nothing was apparently then said in that letter or otherwise about a rental of $75.00 yearly for 1936 or for the future term of 1937-1938. Yet Schoonover testified:

"During '36 I didn't send him any money, but early in '37, in May, I think it was, I sent him a check for a hundred dollars to cover the '36 lease and apply $25.00 on the '37 lease, and Mr. Wilson cashed this check."

So far as the counterclaim of the defendant is concerned, the testimony in the record is sharply in conflict, the purchaser of the lands involved, one Morgan, who bought them July 24, 1937, testifying that he and Schoonover agreed on an exchange and use of lands, as plaintiff's answer to defendant's counterclaim alleged. Schoonover, however, denied that any exchange was made or that he used the lands of the purchaser.

The defendant's theory as based upon his pleadings and his testimony seems to be that the yearly rental for the year 1935 was to be $75.00 only; that the $100.00 paid by Schoonover by check in 1937 liquidated the indebtedness for the year 1936 and paid $25.00 on the 1937-1938 rental claim; and that, being dispossessed of the premises after July 24, 1937, he was entitled to his counterclaim as pleaded.

However, we think, in view of the conflict in the evidence, the district court could properly find as indi-

cated above and render judgment as it did. The rule governing this court in such circumstances has so often been cited and applied that it is unnecessary to again elaborate it other than to say that the findings of the district court under such a situation will not be disturbed here.

There would appear to be another view of these facts which would lead to the same result. Some considerable assistance on this phase of the case may perhaps be obtained from the cases reviewed as follows:

In Zindler v. Levitt, 116 N. Y. Supp. 726, it appeared that the lessors, upon the lessee's plea that they were "not doing the business they thought they would," had agreed to reduce the rent of $41.66 per month to $25.00 per month for three months and had accepted the last mentioned sum for each of those months. The trial judge held that notwithstanding this executed agreement, the lessors could recover not only the full rent rate of $41.66 for months not covered by the agreement, but the balance remaining above the $25.00 monthly payments thus accepted on the $41.66 per month as originally agreed upon. Holding that this allowance of claim for balance as stated above was error, the appellate division of the Supreme Court of New York said:

"While the agreement to reduce the rent remained unexecuted, it was void and inoperative. The lessors had the right to repudiate it at any time, and demand the full amount of rent provided for in the lease; but as to the payments which had fallen due, and had been paid and accepted as payments in full in accordance with the agreement to reduce the rent, the defendants —the lessors—could not revoke nor repudiate it and maintain an action to recover the sum deducted. McKenzie v. Harrison, 120 N. Y. 260, 24 N. E. 458, 8 L. R. A. 257, 17 Am. St. Rep. 638; Hayne v. Sealy, 71 App. Div. 418, 75 N. Y. Supp. 907; Lewis v. Donohue, 27 Misc. Rep. 514, 58 N. Y. Supp. 319; Napier v. Spielmann, 54 Misc. Rep. 96, 103 N. Y. Supp. 982."

Quoting from 36 C. J. 345, 346, the court in Winer v. Williams, 165 Tenn. 190, 54 S. W. (2d) 723, said:

" 'Subject to the rules applicable to the modification of leases in general, rent may be increased or reduced in amount by the express or implied agreement of the parties, if based upon a sufficient consideration.' * * *

'A consideration is necessary to support the modified or new agreement operating to change the amount of rent required to be paid by the terms of the lease, and where there is no consideration for the modification, the original rent for the remainder of the term may be recovered after acceptance of a less amount for intervening periods.'

This is almost a universal rule, as will be seen from the list of cases collected in 43 A. L. R., beginning on page 1478."

In Sinnige v. Oswald, 170 Cal. 55, 148 P. 203, the Supreme Court of that State held that the acceptance by a landlord of a lower rent than that specified in the lease was not sufficient to establish a modification of the lease so as to affect the amount of rent due in the future, although producing a settlement of rent accruing during the period for which the lower amount was accepted, and the court adopted the opinion of the district court of appeal in the case to the following extent:

" 'The findings that there was no change in the terms of the lease in the alleged particular of reducing the rent is sustained by the evidence. Concessions of the kind that were shown by the defendants, when supported by a consideration, are valid to the extent that a lower rent has been tendered and accepted as satisfaction in full of the installments thus paid. They are not sufficient to establish a change in the written contract so as to affect the amount of future installments of rent where no such change of terms has been made in writing. Estate of McDougald, 146 Cal. 196, 199, 79 Pac. 875.' "

So in Campbell v. Spare, 180 Cal. 128, 179 P. 384, the court held that correspondence and conduct dealing

with agreements to accept, and actual acceptance, of less than the rent provided for in a lease did not show that the parties intended that the terms of the original lease should be impaired or abrogated and that mere agreements to accept, and actual acceptance, during dull periods of business, of less rent than provided by a lease, were not alone sufficient to establish a change in the written lease so as to affect the amount of future installments of rent, and in the course of its opinion the court said this:

"The fair inference, it seems to us, to be drawn from the dealings and conduct of the parties is that they were desirous and willing to meet and overcome an embarrassing financial situation through the medium of temporary concessions, which were not intended or accepted by the parties as permanently impairing or abrogating the original terms of the lease."

See also Bell v. Quagliotti, 26 B. C. (Canadian) 482, as of similar import.

The reduction of the rent in the case at bar for the year 1935, and its acceptance by Wilson, was so far as the facts presented here disclose, simply for the purpose of voluntarily, on Wilson's part, temporarily aiding Schoonover in his financial embarrassment, occasioned by hard times and lack of sufficient feed upon the ground leased. It was with no thought of establishing an agreement changing to $75.00 per year only, the rental sum of $150.00 per year, originally agreed upon by the parties and previously paid by Schoonover over a period of years without objection. In 1935, he protested he could not pay the $150.00 per year due to unusual conditions affecting him. In 1936, he said nothing at all about such conditions still prevailing, and made no effort to effect a change. Indeed, he did not even pay any rental due during that year. When he sent the $100.00 payment to Wilson in 1937 he still did not raise the question, saying, as we have seen,

merely, that the amount was a "payment on my lease," expressing appreciation that Wilson had "waited this long time" for the rental due and that he (Schoonover) still desired to hold the leased premises. If Schoonover wanted a change in the prior agreement for $150.00 rental, he should have promptly sought a new arrangement with Wilson for the years 1936 and 1937. This he did not do.

The judgment of the district court of Johnson County should be affirmed.

*Affirmed.*

KIMBALL and BLUME, JJ., concur.